UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

ELIZABETH J. STALLMAN,

        Debtor.
_____/

Case No. DT 15-04700
Hon. Scott W. Dales
Chapter 7

ROSEMARY McNally and JEFFREY
DIETEL,

        Plaintiffs,

v.

ELIZABETH J. STALLMAN,

        Defendant.
_____/

Adversary Pro. No.  16-80011

MEMORANDUM OF DECISION & ORDER

PRESENT:    HONORABLE SCOTT W. DALES
               Chief United States Bankruptcy Judge

I.  INTRODUCTION

Rosemary McNally and Jeffrey Dietel (the "Plaintiffs") paid Stallman Builders $292,119.87 to build a home on Lake Leelanau.  They allege that Stallman Builders, including defendant-debtor Elizabeth Stallman and non-party Charles Stallman, used only $43,768.44 of that fund on their project, diverting the rest for their own purposes or to other projects.

The situation understandably deteriorated, prompting the Plaintiffs to terminate their relationship with the Stallmans, and complete the project without them, allegedly at

considerable expense.  The Plaintiffs seek an order from this court excepting their claims against Ms. Stallman from discharge under 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6).[1]

As a result of the unfortunate handling of this building project and probably others, the local authorities prosecuted and convicted Charles Stallman, and are evidently considering whether to prosecute his ex-wife, the defendant in this adversary proceeding. Given these concerns about Ms. Stallman's criminal exposure, the court and the parties have generally cooperated by postponing Ms. Stallman's deposition to permit law enforcement authorities to make a decision before subjecting her (in this adversary proceeding) to the risk of self-incrimination.  Accordingly, all discovery, except for Ms. Stallman's deposition, has been completed.

Contending that the Plaintiffs cannot meet their evidentiary burdens in this case, Ms. Stallman filed a motion for summary judgment under Fed. R. Civ. P. 56 (the "Rule 56 Motion," ECF No. 42).  This prompted the Plaintiffs to file a motion to compel her to sit for a deposition (the "Motion to Compel," ECF No. 50), together with a response to the Rule 56 Motion (ECF No. 51).  The court entertained initial arguments on the Motion to Compel by telephone on August 22, 2017, and heard arguments on the Rule 56 Motion on October 6, 2017, in Traverse City, Michigan.  The parties appeared through counsel with respect to both motions.

---

[1] The court has jurisdiction over Ms. Stallman's bankruptcy case.  28 U.S.C. § 1334.  The bankruptcy case and all related proceedings have been referred to this court for decision.  28 U.S.C. § 157(a); L. Civ. R. 83.2(a) (W.D. Mich.).  The adversary proceeding is a statutory core proceeding.  28 U.S.C. § 157(b)(2)(I). This court has constitutional authority to enter a final order in this matter, although today's order is not final. Fed. R. Civ. P. 54(b).

## II. ANALYSIS

During the oral argument on the Rule 56 Motion, the court and the parties succeeded in limiting the issues for decision. For example, with respect to the Plaintiffs' supposed claim for conversion, on the record they abandoned the theory in response to the court's questions. Accordingly, the court will grant the Rule 56 Motion to the extent it seeks dismissal of the Plaintiffs' claims under § 523(a)(6) sounding in conversion (set forth under Count II of their Complaint).

Similarly with respect to the Plaintiffs' claim that Ms. Stallman breached her fiduciary obligations under the statutory trust,[2] and that the resulting debt should be excepted from discharge under 11 U.S.C. § 523(a)(4), the Plaintiffs conceded that if the court gives Ms. Stallman credit for the value the subcontractors and material suppliers applied to the project, she could account for the entire building contract fund of $292,119.87, and avoid liability at least to that extent.

As the Sixth Circuit has observed, "[t]he fiduciary relationship established by the [MBCFA] arises at the time any monies are paid to the contractor or subcontractor whether or not there are any beneficiaries of the trust at that time and *continues until all the trust beneficiaries have been paid*." *Patel* v. *Shamrock Floorcovering Services, Inc.*, (*In re Patel),* 565 F.3d 963, 969 (6th Cir. 2009) (emphasis added) (*quoting Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 253 (6th Cir. 1982)). At oral argument, all agreed that the payments totaling $292,119.87 constituted the "*res*" of the statutory trust giving rise to the alleged fiduciary duty and defalcation.

---

[2] Although originally framed as a penal statute, the Michigan Building Contract Fund Act, M.C.L. § 570.151 ("MBCFA"), creates a statutory trust that supports civil, as well as criminal, liability.

Here, the Plaintiffs allege that only $43,768.44 of the $292,119.87 trust *res* was properly paid to subcontractors and suppliers on their project, leaving $248,351.43 that Ms. Stallman, allegedly through her company, misspent, thus subjecting herself to a claim that she breached her duty as statutory trustee with respect to the *res*.[3]  Several of the unpaid suppliers and subcontractors filed liens against the Plaintiffs' property for unpaid bills aggregating in excess of $266,000.00, but later withdrew the liens after reaching a settlement with Ms. Stallman.  Although Ms. Stallman clearly did not use the precise building contract fund in obtaining the lien waivers, as a result of her settlement with the subcontractors and material suppliers who filed liens, she accounted for the entire amount of the statutory trust, and belatedly satisfied whatever fiduciary duty she had to the Plaintiffs under the MBCFA with respect to the monies allegedly entrusted to her, or Stallman Builders, as fiduciary.

As just noted, the fiduciary duty lasts "until all the trust beneficiaries have been paid," *Patel,* 565 F.3d at 969, and here the trust beneficiaries were paid, albeit at a negotiated discount.  There is no dispute that the Plaintiffs received equivalent value on account of every dollar in the statutory trust in the form of goods and services applied to their property by the subcontractors and material suppliers.  Accordingly, the court determines that Ms. Stallman is no longer liable to repay the building contract fund -- she has already accounted for it.

The rest of the Rule 56 Motion, however, is not as susceptible to resolution under Fed. R. Civ. P. 56, for several reasons.  Unfortunately for Ms. Stallman, for example, the

---

[3] For purposes of the oral argument only, the court assumed that Ms. Stallman was a "contractor" and therefore a statutory fiduciary under the MBCFA.  Given the court's determination reflected in today's opinion, the parties will have to explore her relationship with Stallman Builders to determine whether she qualifies as a fiduciary under the statutory scheme.

decision in *Cohen v. de la Cruz,* 523 U.S. 213 (1998), may subject her to all liability related to the alleged defalcation as a fiduciary, not just to the repayment of the trust *res*.  As the high court explained while construing §523(a)(2), the term "debt for" is not limited to the actual misappropriation:

> [i]nstead, "debt for" is used throughout to mean "debt as a result of," "debt with respect to," "debt by reason of," and the like, *see* American Heritage Dictionary 709 (3d ed.1992); Black's Law Dictionary 644 (6th ed.1990), connoting broadly any liability arising from the specified object, *see Davenport, supra*, [___ U.S. __] at 563, 110 S.Ct., at 2133 (characterizing § 523(a)(7), which excepts from discharge certain debts "for a fine, penalty, or forfeiture" as encompassing "debts arising from a 'fine, penalty, or forfeiture'").

*Cohen*, 523 U.S. at 219.  The Supreme Court's construction of the term "debt for" applies equally to § 523(a)(2) and (a)(4).  So, in the present case, if the Plaintiffs can prove that Ms. Stallman qualifies as a fiduciary, and that some liability on account of the defalcation remains unpaid -- *i.e.*, something beyond the trust *res* for which she has already accounted -- they may be able to establish the existence of a debt that is excepted from discharge under § 523(a)(4).  For example, if the Plaintiffs establish that they incurred damages resulting from Ms. Stallman's breach of fiduciary duty -- perhaps fees or costs incurred in trying to eliminate the liens before Ms. Stallman succeeded in this regard -- the court may recognize a non-dischargeable debt to that extent.[4]  The court's decision on this point substantially reduces, but does not eliminate, Ms. Stallman's exposure with respect to

---

[4] Nothing in this opinion, however, shall be construed to relieve the Plaintiffs of the preclusive effect of Judge Rogers's judgment regarding the Michigan Prestain Co. component of their claims, which the court is bound to respect under 28 U.S.C. § 1738.  If Judge Rogers erred in rendering judgment against the Plaintiffs on this issue, their remedy lies within the state court system; the bankruptcy court has no appellate jurisdiction.

Count I of the Complaint.  Accordingly, the court cannot avoid making a decision about whether Ms. Stallman is a fiduciary under the MBCFA.

With respect to remaining issues under the MBCFA, and others implicating Ms. Stallman's involvement in the building project, it would be unfair and inconsistent with the principles of pretrial discovery to require the Plaintiffs to oppose the Rule 56 Motion without having an opportunity to require Ms. Stallman to answer questions under oath, at a deposition, about her role in Stallman Builders at the relevant time.  Some portion of Count I will survive the Rule 56 Motion on the present record.

With respect to Count II, which at first blush seems to cover only the conversion count abandoned at the last hearing, the court notes that the *factual* allegations under this count also put Ms. Stallman on notice of the Plaintiffs' fraud-based claims.  *See, e.g.*, Complaint at ¶¶ 5, 12, 13, 29, 30.  Although most of these allegations pertain to fraud in the performance of the contract, for example by referring to forged documents used "to conceal wrongdoing," the Plaintiffs' response to the Rule 56 Motion also suggests a "fraud-in-the-inducement" theory premised on a "false quote."  At oral argument, Ms. Stallman's counsel stated that he became aware of this theory during discovery (in other words, not from the face of the pleading itself).

Regardless of the precise theory of claim ultimately presented, given the breadth of the Supreme Court's construction of § 523(a)(2), reflected in *Cohen v de la Cruz, infra*, and more recently *Husky Int'l Elec. v. Ritz*, 136 S. Ct. 1521 (2016), the court cannot say that the Plaintiffs' claim for damages resulting from the supposed fraud must fail as a matter of law.

Moreover, as with the claim under the MBCFA, it would be utterly unfair to dispose of the Plaintiffs' fraud claims without affording them an opportunity to depose Ms. Stallman, as the court has assured the Plaintiffs in its earlier pretrial orders. Understandably, the Plaintiffs seek an opportunity to inquire of Ms. Stallman, under oath, whether she participated in creating the initial "false quote," or the allegedly false "sworn statements." Naturally they will need to ask about her access to the company's computers and her ex-husband's email account, specifically, and about her involvement in the Plaintiffs' project more generally.

Proving a fraud case is difficult, dependent to a considerable extent on the defendant's state of mind -- a fact that a plaintiff usually must establish inferentially. The court is unwilling to handcuff the Plaintiffs in the prosecution of their case by denying them access to the main witness, even if the witness in this instance is concerned about handcuffs of a different sort. Everyone has commendably attempted to balance the demands of pretrial discovery against Ms. Stallman's legitimate concerns about criminal exposure for nearly two years, and the Plaintiffs' counsel has been patient and cooperative. With the rest of discovery now completed, however, the time has come for Ms. Stallman to sit for a deposition.

While it may be correct to predict that requiring Ms. Stallman to appear at a deposition would be fruitless because she will simply assert her Fifth Amendment privilege against self-incrimination, which by itself would not support the Plaintiffs' case, the record could permit the court to infer, at trial, that Ms. Stallman's role in Stallman Builders was extensive enough to show that she functioned as a fiduciary, even if she did not hold a formal title in the company as officer, director or owner. For example, statements she made

in the course of her divorce proceedings, checks she drew on the Stallman Builders account, and her role in negotiating the discounts that evidently prompted laborers and suppliers to release their liens, when coupled with the adverse inference the court might draw from her refusal to testify, could result in a ruling against her on the issue of whether she is liable as fiduciary.

Similarly, other record evidence of Ms. Stallman's involvement in Stallman Builders, coupled with adverse inferences that the court may be asked to draw based on the predicted refusal to answer questions, could support the Plaintiffs' fraud theory.

Ms. Stallman cannot enjoy the advantages of asserting the Fifth Amendment privilege against self-incrimination without actually invoking the privilege and shouldering whatever burdens may result from doing so in this civil proceeding. If she intends to assert the constitutional privilege to avoid giving testimony, she may do so on a question-by-question basis. The court naturally assumes that not every question will seek an incriminating response, and at least some of her testimony would almost certainly be relevant and useful in this proceeding. Invocation of the privilege, moreover, may give rise to adverse inferences that the court cannot draw based simply on a prediction that a witness will refuse to testify, or on a broad-brush or wholesale invocation of the privilege.

Having reviewed the affidavit that Plaintiffs' counsel submitted under Fed. R. Civ. P. 56(d), and having determined that it cannot resolve the entire case in response to the Rule 56 Motion for reasons just given, the court will grant the Motion to Compel.

### III. CONCLUSION AND ORDER

At this point, having listened carefully to the arguments on the Rule 56 Motion, the court feels constrained to make a few observations.

First, with respect to the Plaintiffs' theories of claim and their calculation of damages, the link between the two is to a considerable extent difficult to grasp. For example, some of the damages claimed would suggest that the Plaintiffs are suing on the contract, in other words, that they are seeking the benefit of the bargain they struck with Stallman Builders. This damage theory seems suitable to a contract claim, and perhaps a claim for fraudulently inducing the Plaintiffs to contract with Stallman Builders,[5] but not necessarily to a claim under the MBCFA. So, the appropriate measure of damages may depend on the role that Ms. Stallman played, if any, in injuring the Plaintiffs, in addition to any exposure, vicarious or direct, premised on her supposed status as fiduciary. In any event, language used in the Complaint and in response to the Rule 56 Motion has tended to cloud the issue. The court is putting the parties on notice that it will expect greater precision and legal authority linking proofs and theories of claim to damages requested at the conclusion of this proceeding.

Second, on the present record, the court perceives weaknesses in each party's case. Today's decision giving Ms. Stallman credit for bringing about the lien releases substantially reduces the damages at issue, as does the withdrawal of the conversion theory. And, experienced counsel would agree that proving a fraud-in-the-inducement case can be an uphill battle. On the defense side, Ms. Stallman is justifiably concerned about the jeopardy of criminal prosecution -- a risk she might endure at the hands of prosecutors rather than the Plaintiffs, but a risk nevertheless exacerbated by the pendency of this adversary proceeding.

---

[5] *Nationwide Motorist Ass'n of Michigan, Inc. v. Freeman*, 405 F.2d 699, 702 (6th Cir. 1969).

Although the parties have so far been unable to reach agreement on the outcome of their dispute, the court encourages them to continue their negotiations, given the costs and risks of bringing this matter to trial.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Rule 56 Motion is GRANTED in part and DENIED in part, in conformance with today's opinion.

IT IS FURTHER ORDERED that the Motion to Compel is GRANTED, and the deposition shall proceed promptly and in conformance with today's opinion.

IT IS FURTHER ORDERED that the Plaintiffs' counsel shall contact the court not later than January 12, 2018, following the completion of Ms. Stallman's deposition, to arrange a final pretrial conference.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Susan Jill Rice, Esq., and Jan M. Geht, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated October 25, 2017**



Scott W. Dales
United States Bankruptcy Judge